UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BRENDA FAY CHURCH, | CASE NO. 1:23-CV-00219-BYP |
| Plaintiff, | JUDGE BENITA Y. PEARSON |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

INTRODUCTION

Plaintiff Brenda Fay Church challenges the Commissioner of Social Security's decision denying disability insurance benefits (DIB), supplemental security income (SSI), and widow's insurance benefits (WIB). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On February 6, 2023, pursuant to Local Civil Rule 72.2, this matter was referred to me to prepare a Report and Recommendation. (Non-document entry of Feb. 6, 2023). Following review, and for the reasons stated below, I recommend the District Court **AFFIRM** the Commissioner's decision.

PROCEDURAL BACKGROUND

Ms. Church filed for SSI on May 7, 2020, and for DIB and WIB on October 22, 2020, alleging a disability onset date of April 29, 2020. (*See* Tr. 124, 134, 143). The claims were denied initially and on reconsideration. (Tr. 124-51, 154-77). She then requested a hearing before an

1

Administrative Law Judge. (Tr. 206). Ms. Church (represented by counsel) and a vocational expert

(VE) testified before the ALJ on May 18, 2022. (Tr. 45-86).

On May 25, 2022, the ALJ issued a written decision finding Ms. Church not disabled. (Tr.

45-86). The Appeals Council denied Ms. Church's request for review on December 6, 2022,

making the hearing decision the final decision of the Commissioner. (Tr. 6-11; *see* 20 C.F.R.

§§ 404.955, 404.981).[1] Ms. Church timely filed this action on February 2, 2023. (ECF #1).

FACTUAL BACKGROUND

**I.      Personal and Vocational Evidence**

Ms. Church was 52 years old on the alleged onset date, and 54 years old at the

administrative hearing. (*See* Tr. 124). She graduated from high school, attended college for a year,

and obtained a State-tested nursing assistant (STNA) certificate. (*See* Tr. 30). In the past, she

worked as a hand packager, home health aide, and STNA. (Tr. 52, 55-56).

**II.     Relevant Medical Evidence**

On February 19, 2020, Ms. Church met with internist Mary Behmer, M.D., for

management of her chronic conditions. (Tr. 475). This was her first visit to Dr. Behmer since

March 6, 2019. (*Id.*). Ms. Church complained of right-sided abdominal, low back, and pelvic pain,

similar to the discomfort she felt after her hysterectomy. (*Id.*). She also endorsed "a hard time

sleeping due to pain and her mental status." (*Id.*). Dr. Behmer noted Ms. Church's history of

---

[1]      The regulations governing disability determinations under Titles II and XVI for DIB and SSI claims, respectively, of the Social Security Act are essentially identically in all relevant aspects. Title II regulations are found in 20 C.F.R. Part 404, Subpart P (20 C.F.R. §§ 404.1501-404.1599). The corresponding Title XVI regulations are found in 20 C.F.R. Part 416, Subpart J (20 C.F.R. § 416.900-416.999d). My Report and Recommendation cites to the Title II regulations exclusively.

depression, anxiety, alcohol abuse and tobacco abuse disorders, and obstructive sleep apnea for which she does not use a CPAP. (*Id.*). Ms. Church tried Cymbalta for a week but stopped when it made her feel sluggish. (*Id.*).

On examination, she was not in distress, appeared well, exhibited normal speech and behavior, moved all extremities, had slightly reduced reflexes but no acute neurological difficulties, and had a normal genitourinary exam. (Tr. 478). Ms. Church endorsed pain in the groin and back with right leg flexion. (*Id.*). Dr. Behmer ordered X-rays of the lumbar spine and right hip, advised Ms. Church to quit drinking alcohol as it contributes to depression, recommended she try anti-depressants for at least three to four weeks to determine effectiveness, and advised her to use a CPAP. (*Id.*). Lumbar X-rays revealed osteoarthritis and degenerative disc disease. (Tr. 483). Hip X-rays showed marginal spurring and possible narrowing medially, but no evidence for osteoarthritis. (Tr. 484).

On November 30, 2020, Ms. Church presented at a telehealth session with treating psychiatrist Alyssa Beda, M.D., regarding her depression and alcohol, tobacco, and cannabis use disorders. (Tr. 505). Ms. Church endorsed crying spells, a depressed mood, and excessive alcohol consumption. (Tr. 506). Mental status examination revealed an engaged demeanor, normal speech, tangential and coherent thought process, depressed mood and irritable affect, no abnormal thought content, no perceptual distortions, intact cognition, limited insight, and normal-to-mildly impaired judgment. (Tr. 506-07). Dr. Beda had "no acute psychiatric concerns." (Tr. 507).

During a follow-up telehealth session on December 21, 2020, Ms. Church endorsed crying spells, a depressed mood, excessive alcohol consumption, and feeling overwhelmed because she had to take care of her grandson all the time during her daughter's bout of COVID. (Tr. 540-41).

3

Dr. Beda noted Ms. Church was engaged and exhibited normal speech, tangential and coherent thought process, normal thought content without perceptual distortions, depressed mood and congruent affect, intact cognition, limited insight, and normal-to-mildly impaired judgment. (Tr. 541-42).

On February 15, 2021, Dr. Beda recorded similar mental status examination findings except that Ms. Church was euthymic with a congruent and appropriate mood rather than depressed. (Tr. 591-92). At Ms. Church's request, Dr. Beda prescribed Zoloft. (Tr. 590, 592). On March 8, 2021, during a medication management session with Maggie Sturm, Pharm. D., Ms. Church reported no change in mood, energy, sleep, or appetite since starting Zoloft. (Tr. 596-97).

On March 29, 2021, during a follow-up telehealth session with Dr. Beda, Ms. Church was oriented with engaged demeanor, normal speech, tangential and coherent thought process, congruent and appropriate affect, euthymic mood, no abnormal thought content, no perceptual distortions, intact cognition, limited insight, and normal-to-mildly impaired judgment. (Tr. 609). She reported some symptoms improved, including less crying and a better mood, though she was unsure if Zoloft was the reason for the improvement. (Tr. 608, 610). Ms. Church also reported drinking less alcohol. (Tr. 608). Dr. Beda had "no acute psych concerns." (Tr. 610).

On March 22, 2021, Ms. Church's abdominal CT study revealed no acute inflammatory intra-abdominal abnormality. (Tr. 660).

On April 13, 2021, Ms. Church met with Dorothy Bradford, M.D., for a consultative medical examination where she complained of lower back pain that intermittently radiates down her leg, lower abdominal pain, and shortness of breath with exertion. (Tr. 588). On examination, she was in no acute distress, had normal respiratory and cardiovascular findings, positive straight

4

leg raising on the right, low back tenderness over the right sacroiliac joint, normal muscle strength in all muscle groups, normal range of motion in all joints, some decreased range of motion in the lumbar spine, no joint effusions, no swelling, even and regular gait without limp or shuffle, full motor strength in all extremities, normal reflexes, and no neurological deficits. (Tr. 583, 589). Dr. Bradford determined Ms. Church has degenerative joint disease of the lumbar spine with intermittent radicular symptoms on the right side, chronic right-sided lower quadrant pain of unknown etiology, morbid obesity, and mild chronic obstructive pulmonary disease (COPD). (Tr. 589).

On May 3, 2021, Ms. Church attended a follow-up telehealth session with Dr. Beda. (Tr. 611-12). She reported an increase in her drinking and stopping taking Zoloft because it did not help. (Tr. 612, 614). A mental status examination revealed Ms. Church was properly oriented and exhibited an engaged demeanor, normal speech, tangential and coherent thought process, congruent and appropriate affect, depressed mood, no abnormal thought content, no perceptual distortions, intact cognition, limited insight, and normal-to-mildly impaired judgment. (Tr. 613). Dr. Beda had "no acute psych concerns." (Tr. 614).

On June 17, 2021, during a medication management telehealth appointment with Dr. Sturm, Ms. Church claimed she stopped taking Zoloft because it caused nerve pain and swelling in her hands. (Tr. 624).

On June 29, 2021, Ms. Church met with Adam Goins, APRN-CNP, at a gastroenterology clinic and complained of right lower abdominal pain that sometimes radiates into her back. (Tr. 684). Ms. Church described worsened pain after eating and less pain after having a bowel movement. (Id.). She denied nausea, vomiting, hematemesis, dysphagia, odynophagia,

5

unintentional weight loss, and blood in the stool. (Tr. 656). NP Goins ordered an abdominal X-ray, prescribed Bentyl for abdominal pain, and ordered labs and stool studies. (Tr. 688).

On July 26, 2021, Ms. Church met with a new psychiatrist, Alex Malidelis, M.D. (Tr. 633). There, she reported Zoloft was not helping and claimed to have shooting pain in her leg since she began taking it. (Tr. 634). Ms. Church also endorsed abdominal pain, crying spells, a depressed mood, insomnia, and excessive alcohol consumption. (Tr. 634-35). Mental status exam revealed an engaged demeanor, normal speech, tangential and coherent thought process, depressed mood with a congruent and appropriate affect, normal thought content without perceptual disturbance, intact cognition, limited insight, and mildly impaired judgment. (Tr. 641). Dr. Malidelis advised Ms. Church to reduce her dose of Zoloft and prescribed Mirtazapine for sleep. (*Id.*).

On August 2, 2021, Ms. Church reported feeling sluggish and fatigued but admitted to taking her medications just three times in the past week. (Tr. 791). Mental status exam revealed an engaged demeanor, normal speech, tangential and coherent thought process, depressed mood with a congruent and appropriate affect, normal thought content without perceptual disturbance, intact cognition, limited insight, and mildly impaired judgment. (Tr. 793). Dr. Malidelis discussed discontinuing Zoloft. (*Id.*).

On August 5, 2021, Ms. Church met with NP Goins for follow-up regarding worsening abdominal pain and loose stools. (Tr. 655). Ms. Church reported Bentyl did not relieve the pain. (*Id.*). NP Adams noted Ms. Church's labs and stool studies were unremarkable and she did not complete a previously ordered abdominal X-ray. (*Id.*). Physical examination revealed tenderness in the right lower abdomen. (Tr. 658). NP Adams advised Ms. Church to schedule the previously

6

ordered abdominal X-ray, stop taking Bentyl, and begin taking Levsin for abdominal pain. (Tr. 660). The abdominal X-ray showed a nonobstructive and nonspecific bowel pattern. (Tr. 665).

On October 18, 2021, Ms. Church attended a telehealth session with Dr. Malidelis and reported compliance with Mirtazapine. (Tr. 761). Ms. Church reported feeling slightly better since taking the medication. (Tr. 763). Mental status exam revealed an engaged demeanor, normal speech, tangential and coherent thought process, depressed mood with a congruent and appropriate affect, normal thought content without perceptual disturbance, intact cognition, limited insight, and mildly impaired judgment. (*Id.*).

On February 14, 2022, Ms. Church presented at a telehealth session with Dr. Malidelis and reported stopping Mirtazapine months ago because she was told to, but felt she was benefitting from the medication. (Tr. 720). Mental status exam revealed an engaged demeanor, normal speech, tangential and coherent thought process, depressed mood with a congruent and appropriate affect, normal thought content without perceptual disturbance, intact cognition, limited insight, and mildly impaired judgment. (Tr. 719). Dr. Malidelis advised Ms. Church to restart the medication to target depression, anxiety, and insomnia. (*Id.*).

On March 14, 2022, Ms. Church attended a telehealth visit with Dr. Malidelis, where she described racing thoughts, irregular sleep and daytime tiredness, and watching her grandson while her daughter works. (Tr. 698). Ms. Church reported taking half the dose of Mirtazapine. (Tr. 701). She endorsed depression but "says she is fine and [does not] want to change anything about her life, feels overwhelmed by everything, [but is] unable to give any specifics." (*Id.*). Mental status exam revealed an engaged demeanor, normal speech, tangential and coherent thought process,

7

depressed mood with a congruent and appropriate affect, normal thought content without perceptual disturbance, intact cognition, limited insight, and mildly impaired judgment. (Tr. 700).

### III.     Medical Opinions

In February 2021, state agency reviewing psychologist Aracelis Rivera, Psy.D., examined Ms. Church's medical records and adopted the mental limitations set forth in the previous residual functional capacity (RFC) assessment from the prior decision denying benefits, dated April 29, 2020. (Tr. 127). Accordingly, Dr. Rivera determined Ms. Church was limited to performing simple, routine tasks with no strict production rate pace requirements and could handle routine changes. (Tr. 130). State agency reviewing psychologist Courtney Zeune, Psy.D, affirmed Dr. Rivera's findings in August 2021. (Tr. 157).

In April 2021, Dr. Bradford stated Ms. Church could perform "light sedentary activity" but did not define the term or offer any specific functional limitations. (Tr. 589).

In May 2021, state agency reviewing physician Linda Hall, M.D., determined Ms. Church's physical condition materially changed since the prior unfavorable decision and did not adopt the prior RFC assessment. (Tr. 129). Due to low back pain, COPD, and obesity, Dr. Hall determined Ms. Church could lift and carry twenty pounds occasionally, ten pounds frequently; stand and/or walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday; occasionally climb ramps and stairs, stoop, and crawl; never climb ladders, ropes, or scaffolds; frequently kneel and crouch; must avoid concentrated exposure to extreme temperatures, humidity, and pulmonary irritants; and avoid all exposure to hazards such as dangerous machinery and unprotected heights. (Tr. 128-30). In September 2021, state agency reviewing physician Mehr Siddiqui, M.D., affirmed Dr. Hall's findings. (Tr. 158-59).

IV.     **Administrative Hearing**

On May 18, 2022, Ms. Church participated in a telephonic hearing before the ALJ. (Tr. 47). She was previously denied benefits in April 2020. (Tr. 49). Also in 2020, Ms. Church worked at Dove Die & Stamping Company packing small parts for cars. (Tr. 52-55). Before that, she worked as a home health aide and STNA. (Tr. 55-56). Ms. Church moved in with her daughter. (Tr. 60). She drives infrequently out of fear. (Tr. 50).

Ms. Church can no longer work full time because of daily pain, including whole body aches and back and womb pain. (Tr. 58-59). She struggles to get up, bathe herself, or "even just help [her]self." (Tr. 60). Though in pain, Ms. Church assists her daughter with all the household chores daily and helps to take care of her four-year-old grandson. (Tr. 64-65, 66-67, 74). The pain limits her ability to stand, sit, and sleep. (Tr. 61). She is constantly tired and has little energy. (Tr. 75).

Ms. Church can sit and stand for 15 minutes each before changing positions. (Tr. 61-62). She can lift 25 pounds for up to two hours a day. (Tr. 62-63). She can climb steps but takes breaks due to shortness of breath. (Tr. 69). She described her breathing issues as "okay," and was trying to quit smoking. (*Id.*).

Ms. Church's providers do not prescribe pain medication and she does not know why. (Tr. 63-64). She began feeling anxious and depressed around the time her husband became ill and continues to experience grief after losing multiple family members to COVID in 2020. (Tr. 72-73). She is in counseling and takes Mirtazapine at bedtime for her mental health conditions. (Tr. 64, 70).

9

The VE testified that a person of Ms. Church's age, education, and work experience, with the functional limitations described in the ALJ's RFC determination, could perform her past relevant work as a hand packager[2] and perform other light, unskilled work such as an office cleaner, mail clerk, or food service worker. (Tr. 79-81). The VE also testified that employers tolerate up to 10% off-task time and do not tolerate 20% or more off-task time. (Tr. 83). He did not have a professional opinion regarding employers' tolerance for off-task time between 11% to 19% percent of the workday. (*Id.*). The VE also testified employers tolerate one to two monthly absences on average. (Tr. 84).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1.      Was claimant engaged in a substantial gainful activity?

2.      Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.      Does the severe impairment meet one of the listed impairments?

---

[2]      The VE first classified Ms. Church's past relevant work as an assembler but later corrected the title to hand packager. (Tr. 79, 81). After the hearing, the ALJ verified the correct title of Ms. Church's past relevant work is inspector/hand packager. (Tr. 36).

4.      What is claimant's residual functional capacity and can claimant perform past relevant work?

5.      Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity (RFC) to perform available work in the national economy. *Id.* The ALJ considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) and 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## THE ALJ'S DECISION

At Step One, the ALJ determined Ms. Church engaged in substantial gainful activity during the third quarter of 2020 but noted there was a continuous twelve-month period during which she did not engage in substantial gainful activity and proceeded to Step Two of the analysis. (Tr. 24). At Step Two, the ALJ identified the following severe impairments: generalized anxiety disorder; cannabis abuse; depression with alcohol dependence; degenerative and osteoarthritic changes in the lumbosacral spine; obesity; COPD with tobacco abuse disorder; and status-post gallbladder surgery. (Tr. 25). The ALJ determined Ms. Church's kidney stones were not a severe impairment. (*Id.*).

At Step Three, the ALJ determined Ms. Church did not have an impairment or combination of impairments that meets or medical equals the severity of one of the listed

11

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*). The ALJ specifically addressed

Listings 1.15 (disorders of the skeletal spine), 3.02 (chronic respiratory disorders), 12.04

(depressive, bipolar, and related disorders), and 12.06 (anxiety disorders). (Tr. 25-31). Regarding

Listing 1.15, the ALJ compared the criteria of the listing with Ms. Church's medical records and

determined she did not meet the criteria, either singly or in combination with obesity or

gastrointestinal discomfort. (Tr. 26-28). As to Listing 3.02, the ALJ determined the results of Ms.

Church's pulmonary function testing did not meet the criteria for chronic respiratory disorders,

either singly or in combination with her obesity. (Tr. 28-29). As to Listings 12.04 and 12.06, the

ALJ concluded Ms. Church had moderate limitations in understanding, remembering, or applying

information; interacting with others; concentrating, persisting, or maintaining pace; and adapting

or managing herself. (Tr. 29-31).

Before proceeding to Step Four, the ALJ reviewed the medical records, administrative

hearing testimony, and medical opinions and determined Ms. Church has

> the residual functional capacity to perform light work as defined in 20 CFR
> 404.1567(b) except for the following limitations. Specifically, the claimant can
> frequently kneel and crouch. She can occasionally climb ramps and stairs, but never
> climb ladders, ropes, or scaffolds. She can occasionally stoop and crawl. She must
> avoid concentrated exposure to extreme cold, extreme heat, humidity as well as
> dust, odors, fumes, and pulmonary irritants. She should never be exposed to
> unprotected heights, dangerous moving mechanical parts, or operate a motor
> vehicle. Mentally, she has the ability to carry out, concentrate, persist, and maintain
> pace for completing simple, routine, repetitive tasks with no strict production rate
> pace requirements. She can tolerate occasional changes in a routine work setting.

(Tr. 32).

At Step Four, the ALJ determined Ms. Church could perform past relevant work as a hand

packager. (Tr. 35). At Step Five, the ALJ also concluded Ms. Church can perform other jobs that

exist in significant numbers in the national economy, including office cleaner, mail clerk, and food service worker. (*Id.*).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).

In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir. 1984)).

13

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Social Security*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted). Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own procedures and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

### DISCUSSION

Ms. Church brings three issues for review:

1. Whether the ALJ properly applied Social Security Ruling (SSR) 16-3p when analyzing her symptoms.

2. Whether, at Step Four, the ALJ independently resolved a conflict between the VE's testimony and the DOT in violation of SSR 00-4p.

3. Whether the ALJ erred at Step Five regarding Ms. Church's ability to perform other work in the national economy.

(ECF #7 at PageID 847, 852-53).

**I.     The ALJ's symptom evaluation findings are supported by substantial evidence.**

Ms. Church argues the ALJ did not articulate "any supportable rationale" for finding her statements not entirely consistent with the medical evidence. (*Id.* at PageID 849). In support of her

14

argument, Ms. Church offers a list of her reported symptoms and concludes "the testimony and medical evidence established the limited nature of [her] daily activities and the difficulties she had due to her symptoms." (*Id.* at 848-49). The Commissioner responds that the ALJ properly evaluated the Ms. Church's symptoms and substantial evidence supports her decision. (ECF #12 at PageID 868-69). For the following reasons, I agree with the Commissioner.

An ALJ follows a two-step process for evaluating an individual's symptoms. First, the ALJ determines whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p, 2017 WL 5180304. Second, the ALJ evaluates the intensity and persistence of the individual's symptoms and determines the extent to which they limit the individual's ability to perform work-related activities. *Id.*

At the second stage, recognizing that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence, the ALJ considers the entire case record, including the objective medical evidence; the individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case. *Id.* In addition, the ALJ uses the factors set forth in 20 C.F.R. § 404.1529(c)(3) to evaluate the individual's statements:

1. A claimant's daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5.      Treatment, other than medication, an individual receives or has received for relief from pain or other symptoms;

6.      Any measures other than treatment an individual uses or used to relieve pain or other symptoms; and

7.      Any other factor concerning an individual's functional limitations and restrictions due to pain and other symptoms.

The ALJ is not required to analyze all seven factors, only those germane to the alleged symptoms. *See, e.g., Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005) ("The ALJ need not analyze all seven factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence.").

The ALJ is not required to accept the claimant's subjective complaints and may discount subjective testimony when the ALJ finds those complaints are inconsistent with objective medical and other evidence. *Jones*, 336 F.3d at 475-76. The ALJ may not reject an individual's statements about her symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged but must carefully consider other evidence in the record. *See* 20 C.F.R. § 404.1529(c)(2); *see also* SSR 16-3p, 2017 WL 5180304 at *6.

The ALJ's decision must include "specific reasons for the weight given to the individual's symptoms" in a "consistent" and "clearly articulated" way, so "any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10. The ALJ's evaluation must be limited "to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments." *Id.* at *11. The ALJ need not use any "magic words," so long as it is clear from the decision as a whole why the ALJ reached a specific

16

conclusion. *See Christian v. Comm'r of Soc. Sec.*, No. 3:20-CV-01617, 2021 WL 3410430, at *17 (N.D. Ohio Aug. 4, 2021).

An ALJ's determination of subjective evidence receives great deference on review. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). Absent compelling reason, this Court may not disturb the ALJ's analysis of the claimant's subjective complaints, or the conclusions drawn from it. *Baumhower v. Comm'r of Soc. Sec.*, No. 3:18-CV-0098, 2019 WL 1282105, at *2 (N.D. Ohio Mar. 20, 2019). "As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess[.]" *Ulman*, 693 F.3d at 713-14.

Here, the ALJ analyzed the appropriate factors and the objective medical evidence in accordance with the regulations and adequately articulated her reasons for finding Ms. Church's statements concerning the intensity, persistence, and limiting effects of her symptoms not consistent with the evidence. Related to Ms. Church's back and abdominal pain and the exacerbating effects of her obesity, the ALJ noted imaging results showing "some disc-space narrowing" in the lumbar spine, "no acute intra-abdominal abnormality," and positive straight-leg-raise testing that was consistent with "intermittent right radicular symptoms." (Tr. 27, 28, 33). The ALJ also cited medical records showing largely normal physical, musculoskeletal, genitourinary, and respiratory examinations, including findings of normal muscle strength, gait, joint range of motion, and motor strength, that do not support the alleged intensity, persistence, and limiting effects of her symptoms. (Tr. 33, citing Tr. 478, 589, 658). The ALJ additionally stated:

> In the claimant's case, the undersigned finds the claimant has been diagnosed with depression and anxiety that are exacerbated by her alcohol abuse and her unwillingness to stop using. Despite the nature of the claimant's mental impairments, she has continued to care for her personal needs and the health and safety of her grandson during the current adjudicating period, which bolsters the nonexertional mental limitations set forth in [the RFC]. Additionally, as discussed

17

in Step One of this decision, the claimant engaged in post-onset work activity with Dove Die & Stamping Inc., as an inspector/hand packager despite the ongoing effects of alcohol abuse, marijuana abuse, and her noncompliance with psychotropic medications for much of the current adjudicating period. Pursuant to the guidance from SSR 16-3p, the claimant's activities of daily living are relevant factors that provide insight into the claimant's longitudinal effects of her severe mental and physical impairments during the current adjudicating period.

(Tr. 34).

Plainly, the ALJ considered the relevant factors, including medication compliance and daily activities, and sufficiently articulated how those factors, in conjunction with the objective medical evidence, do not support the alleged intensity, persistence, and limiting effects of Ms. Church's symptoms. The ALJ supported her conclusions with citations to substantial evidence in the record. Ms. Church cannot refute the ALJ's conclusions by reciting a list of self-reported symptoms, no matter how extensive, where the ALJ's conclusions are themselves supported by substantial evidence. *See* 20 C.F.R. § 404.1529 (statements about your pain and other symptoms will not alone establish you are disabled). Moreover, even if substantial evidence supported Ms. Church's position, this court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477.

Because the ALJ applied the correct legal standards and her decision is supported by substantial evidence, I recommend the District Court decline to remand on this basis.

II.  **The ALJ did not commit reversible error at Step Four, making it unnecessary to address Ms. Church's argument concerning Step Five.**

In the prior unfavorable decision, the ALJ identified Ms. Church's past job title as a home attendant and concluded she could not perform that past relevant work. (Tr. 114). In the current decision, the ALJ classified Ms. Church's past relevant work as hand packager, home health aide, and STNA, and determined she could perform her past relevant work as a hand packager. (Tr. 35).

18

As the ALJ explained in the current decision, prior ALJ findings related to past relevant work are binding on the Social Security Administration in subsequent claims with respect to an unadjudicated period unless there is new and material evidence or changed circumstances to provide a basis for a different finding. (Tr. 35, citing *Dennard v. Sec'y of Health & Human Servs.,* 907 F.2d 598 (6th Cir. 1990)). Ms. Church does not dispute the application of *Dennard* to find new past relevant work, but rather believes the ALJ independently resolved a conflict between the VE's testimony and the *Dictionary of Occupational Titles* that was contrary to the VE's testimony. (ECF #7 at PageID 852). Specifically, she claims the VE identified Ms. Church's past relevant work as an assembler, "yet the ALJ determined after the hearing that the job was as an inspector/hand packager." (*Id.* at PageID 851).

As discussed above, the VE initially classified Ms. Church's past relevant work as an assembler but later in the hearing corrected himself and classified her past relevant work as inspector/hand packager. (Tr. 79, 81). After the hearing, the ALJ independently verified inspector/hand packager was the correct job title matching the DOT number and description the VE identified at the hearing. (Tr. 36). As such, Ms. Church has not identified an error at Step Four. The ALJ's determination that Ms. Church can perform her past relevant work is supported by substantial evidence.

Because Ms. Church can perform her past relevant work, she is not disabled. I do not reach Step Five or any of the arguments Ms. Church has advanced concerning Step Five because the ALJ's conclusion at Step Four is supported by substantial evidence, rendering any such discussion unnecessary.

19

CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I

recommend the District Court **AFFIRM** the Commissioner's decision denying disability insurance

benefits, supplemental security income, and widow's insurance benefits.

Dated: January 8, 2024

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

OBJECTIONS, REVIEW, AND APPEAL

**Within 14 days after being served with a copy of this Report and
Recommendation, a party may serve and file specific written objections to the
proposed findings and recommendations of the Magistrate Judge.** *See* **Fed. R.
Civ. P. 72(b)(2);** *see also* **28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly
asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or
waiver of the right to raise the issue on appeal, either to the district judge or in a
subsequent appeal to the United States Court of Appeals, depending on how or
whether the party responds to the Report and Recommendation.** *Berkshire v.
Dahl,* **928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not
merely indicate a general objection to the entirety of the Report and
Recommendation; "a general objection has the same effect as would a failure to
object."** *Howard v. Sec'y of Health and Hum. Servs.,* **932 F.2d 505, 509 (6th Cir.
1991). Objections should focus on specific concerns and not merely restate the
arguments in briefs submitted to the Magistrate Judge. "A reexamination of the
exact same argument that was presented to the Magistrate Judge without specific
objections 'wastes judicial resources rather than saving them and runs contrary to
the purpose of the Magistrates Act.'"** *Overholt v. Green,* **No. 1:17-CV-00186,
2018 WL 3018175, at \*2 (W.D. Ky. June 15, 2018) (quoting** *Howard,* **932 F.2d at
509). The failure to assert specific objections may in rare cases be excused in the
interest of justice.** *See United States v. Wandahsega,* **924 F.3d 868, 878-79 (6th
Cir. 2019).**